IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ASCION LLC d/b/a REVERIE,

                        Plaintiff,

  v.

ASHLEY FURNITURE INDUSTRIES, INC.,

                        Defendant.

OPINION AND ORDER

19-cv-856-jdp

---

      This patent case has lost a lot of steam since it was filed. Plaintiff Ascion, LLC, accused defendant Ashley Furniture Industries, Inc., of infringing U.S. Patent No. 9,451,833, for a multi-part bed leg assembly that can be put together in various configurations to produce different heights.

      Ascion now concedes that defendant Ashley Furniture does not infringe the '833 patent, at least not by selling the Good model adjustable bed, which is the only currently accused product. Ascion has provided Ashley Furniture with a covenant not to sue on the Good model. Dkt. 100-1. Ascion thinks that should put this case to rest, because without an active threat of infringement, the court would not have jurisdiction over Ashley Furniture's declaratory judgment counterclaim that the '833 patent is invalid. So Ascion moves to dismiss the case for lack of jurisdiction, thus ducking Ashley Furniture's challenge to the validity of its patent. Dkt. 103. But Ashley Furniture opposes that motion, seeking to press on with its invalidity challenge, which is the only still-viable part of its fully briefed motion for summary judgment. Dkt. 69.

      The court cannot reach the summary judgment motion if it no longer has jurisdiction over the invalidity counterclaim, so the court starts with Ascion's motion to dismiss.

**A. Ascion's motion to dismiss for lack of jurisdiction**

If Ascion had granted Ashley Furniture a broad covenant not to sue under the '833 patent, the court would dismiss the case for lack of jurisdiction because Ashley Furniture would face no apparent threat of infringement litigation. The court has jurisdiction to grant a request for declaratory judgment only when there is an actual controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A full covenant not to sue on the '833 patent, or even a covenant not to sue for Ashley Furniture's current and planned products, would deprive the court of jurisdiction over Ashley Furniture's invalidity claims.

But Ascion actually accused the leg assemblies used on Ashley Furniture's Better and Best models earlier in the case, Dkt. 49 (expert report with infringement contentions), and it sought to amend its infringement contentions to press those claims, Dkt. 51. The court concluded that it was too late *in this case* to allow Ascion to amend its infringement contentions to include claims based on the leg assemblies used on the Better and Best models, Dkt. 66, but that wouldn't prevent Ascion from trying again in a new lawsuit. And, after granting the covenant not to sue on the Good model, Ascion expressly refused to extend the covenant to the Better and Best models. Dkt. 100-2, at 2. Ascion does not now expressly threaten Ashley Furniture with further litigation, but its refusal to extend the scope of the covenant to Ashley Furniture's current products shows Ascion's intent to keep its litigation options open.

Ascion relies on *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), to argue that its covenant not to sue puts the burden on Ashley Furniture to negate the possibility of future litigation. Ascion misreads *Already* in two fundamental ways. First, Ascion misstates the burden. Ascion says, "All Ascion need show is that it 'could not reasonably be expected to resume its

2

enforcement efforts against'" Ashley Furniture. Dkt. 112, at 4–5. Ascion says that it meets its burden by voluntarily ceasing its enforcement efforts and offering the covenant not to sue. But the Supreme Court explained that under the voluntary cessation doctrine, it is the party in the position of defendant who bears a "formidable burden" to show that voluntary cessation negates the possibility of future litigation. *Id*. at 92. That party is Ascion here, because Ascion is the one whose patent enforcement efforts gave rise to declaratory judgment jurisdiction in the first place. Under *Already*, Ascion bears the formidable burden to show that it is not "free to return to its old ways." *Id*.

Second, the covenant not to sue at issue in *Already* was much broader than the one granted here. Nike's covenant covered *all* of Already's current products and "colorable imitations" of them, and thus Nike's covenant met its burden. But Ascion's covenant does not even cover all of Ashley Furniture's current products. By reserving its right to sue on some of Ashley Furniture's current products, Ascion reserved the right to return to its old ways. The court concludes that it still has jurisdiction over Ashley Furniture's invalidity counterclaim. Ascion's motion to dismiss is denied.

## B. Ashley Furniture's motion for summary judgment

Ashley Furniture moved for summary judgment on three grounds, contending that it had shown as a matter of law that: (1) the accused products didn't infringe the '833 patent; (2) the '833 patent is invalid; and (3) any infringement was not willful. Ascion's covenant not to sue moots the infringement-related grounds. So the only part of Ashley Furniture's motion that the court must address concerns invalidity.

Ashley Furniture contends that all the asserted claims of the '833 patent are invalid for two reasons, both related to the claim limitation that the first member of the leg assembly have

3

a "substantially horizontal bottom surface." Ashley Furniture contends that this limitation lacks the required written description in the specification and that the limitation is indefinite, which are two formal requirements of a valid patent. 35 U.S.C. § 112.

### 1. Legal standards

The written description requirement is in paragraph (a) of section 112. It states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112(a). The purpose of the written description requirement is to demonstrate that, at the time of the application, the inventor actually had invented the thing claimed. The written description in the specification establishes the inventor's priority with respect to prior art and perhaps to competing claimants. The written description is sufficient if "the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Whether the written description is adequate is a question of fact, dependent on context of nature of the claims and the complexity and predictability of the technology. *Id*. at 1351.

The definiteness requirement is in paragraph (b) of section 112. It states:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The purpose of this requirement is to provide adequate public notice of the scope of the inventor's rights. "[A] patent is invalid for indefiniteness if its claims, read in light of the

4

specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Whether a claim is indefinite is a question of law for the court. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015).

### 2. The '833 patent and its prosecution history

Against that legal background, the court turns to the '833 patent itself. The patent is titled "Leg Assembly for a Support Frame," and it claims a multi-member leg assembly that can be put together in different configurations to produce different lengths. The court will explain the prosecution history in some detail to provide context for the challenged claim language, which was introduced late in the prosecution.

The patent was issued from Application No. 14/754214, filed on June 29, 2015. The '214 application was itself preceded by a long chain of prior applications that relate to a complex adjustable bed. The adjustable leg assembly claimed in the '833 patent is but one aspect of the adjustable bed; other applications disclosed and claimed other aspects. Neither side points to any of the prior applications in the chain that led to the '833 patent as relevant to the validity issues now before the court. So, for purposes of the court's work here, it is the '214 application that must include the disclosure relevant to the written description issue.

The specification of the '833 patent, like the specifications of other patents in the family, provides a general disclosure of the complex adjustable bed. Excluding the summary and the claims, the specification runs for 58 columns, but only 12 lines describe the adjustable leg assembly. The description of the leg assembly, in its entirety, states:

> In embodiments, a modular leg construction using threaded members is depicted in FIG. 58A, FIG. 58B, and FIG. 58C. FIG. 58C depicts a threaded leg member of one size, FIG. 58B depicts a threaded leg member of another size, and FIG. 58A depicts a

5

> combination leg foamed [sic] from threading the threaded leg members depicted in FIGS. 58B and 58C together. For example, one threaded member may be three inches, as in FIG. SSC and another threaded member may be five inches, as in FIG. 58B. These two threaded members may be used individually to provide legs for the bed of a certain height. However, the legs may also be threaded together to provide a longer leg, such as the eight inch leg that is shown in FIG. SSA.

'833 patent, 57:25–37. As the foregoing description indicates, the leg assembly was also described with three figures, 58A, 58B, and 58C. So if there is an adequate written description of the claimed "substantially horizontal bottom surface," it will have to be in the 12 quoted lines and three figures.

The application included only one independent claim, which did not include any limitations relating to the top and bottom surfaces of the members of the assembly. Dkt. 75-6 (prosecution history), at 140. Additional claims were added in a preliminary amendment, Dkt. 75-6, at 263–65, but these claims did not include the limitations relating to the top and bottom surfaces either.

The claim limitation at issue came later in the prosecution, prompted by an office action rejecting the claims as anticipated by U.S. Pat. App. Pub. No. 2006/0119156 to Crue, and as obvious in light of the Crue application and U.S. Pat. No. 6,006,379 to Hensley. Dkt. 75-6, at 348–54. The Crue application disclosed stacking bar stools with leg extenders that gave the stools adjustable height. In response to the office action, the applicant amended the claims of the '833 patent to include limitations related to the configuration of the top of the members of the assembly. Dkt. 75-6, at 377–87. This is an illustrative portion of an amended claim highlighting the applicant's changes to the claim language:

> a first leg member having a body portion with *an outer surface*, a top end and an opposite bottom end, the top end having a top surface and the bottom end having a bottom surface, *the outer*

6

> *surface extending beyond the top surface and having a top edge such that the top surface is recessed relative to the top edge*, the body portion having a first top-to-bottom length defined between the top ~~surface~~ *edge* and bottom surface;

Dkt. 75-6, at 378. To put it in plainer language, the claims were amended to add a limitation that members of the leg assembly have a recessed area at the top. This recess was not present in the leg extenders of the Crue application.

But this amendment did not quite satisfy the examiner, who proposed an examiner's amendment to add the "substantially horizontal bottom surface" limitation that Ashley Furniture now challenges. Dkt. 75-6, at 402–04. The illustrative portion of the claim, as further amended by the examiner, read:

> a first leg member having a body portion with an outer surface, a top end and an opposite bottom end, the top end having a top surface and the bottom end having a *substantially horizontal* bottom surface, the outer surface extending beyond the top surface and having a top edge such that the top surface is recessed relative to the top edge, the body portion having a first top-to-bottom length defined between the top edge and bottom surface;

The examiner explained that the "substantially horizontal bottom" limitation was needed to distinguish the leg assembly from prior art:

> the use of a stacking assembly comprising a plurality of stacked components each having a top edge and a top surface which is recessed relative to the top edge has long been known in the art as evidenced by the newly-cited prior art references, the respective stacked components disclosed in these references typically include a complementary notched or grooved non-planar bottom surface which receives the top edge of an underlying component, or an annular bottom edge which abuts and is disposed below the top edge of an underlying component, as opposed to the use of a plurality of leg members each having a substantially horizontal bottom surface and wherein the top edge of one of the leg members is disposed against and under the bottom surface of another leg member, as explicitly recited in Applicant's claims.

*Id*. at 403. The applicant agreed to the examiner's amendment in an interview. *Id*. at 405.

The patent issued with the claims as amended by the examiner.

### 3. Lack of written description

The amendment made by the applicant to add the claim limitation involving the recess on the top of the members is supported by figures 58A, 58B, and 58C. Although the final line drawings were not submitted with the original application, the application included, as placeholders for the final drawing, photographs of the leg members clearly showing the now-claimed recess at the top. Dkt. 75-6, at 209. So those limitations are supported by an adequate written description, because it's clear that the inventor of the '833 patent was in possession of leg members with a recessed top.

But the same is not true for the limitation relating to the configuration of the bottom. The bottom surface of the leg members is not discussed at all in the 12 lines of the specification devoted to the leg assembly. And the bottoms cannot be seen in the photographs submitted with the application.

Ascion's argument in defense of the written description in the '833 patent is that a person of skill in the art could look at figures 58A, 58B, and 58C and determine that the bottom of the members must have a substantially horizontal area to mate with the top edge of the members. Dkt. 90, at 30–32. The claims require that "the top edge of the outer surface of one of the leg members is disposed against and under the bottom surface of the other of the leg members." The court agrees that it's clear from the context of the patent that the bottom of the top leg member must have a "substantially horizontal" area that mates with the top edge of the member below it.

All that is required from a functional perspective is a circular area that mates with the circular area that constitutes the "top surface." But the claim limitation requires more than

8

that. Recall that the examiner required the "substantially horizontal bottom surface" to distinguish the '833 patent from prior art that had "a complementary notched or grooved non-planar bottom surface which receives the top edge of an underlying component, or an annular bottom edge which abuts and is disposed below the top edge of an underlying component." The flat bottom was critical to patentability; an adequate written description of the flat bottom in the application is necessary to show that the inventor was in possession of the claimed invention at the time of the application.

Ascion's argument that one of skill in the art could figure out how to make a bottom surface that works with the top surface show in figures 58A, 58B, and 58C might show that the specification is enough to teach one how "to make and use" the invention. But that speaks to the enablement requirement in section 112. The written description requirement is separate from the enablement requirement, and each serves a distinct purpose. *Ariad Pharm.*, 598 F.3d at 1344. That one of skill in the art could figure out how to make a bottom surface that worked with the recessed top is immaterial to the question of whether the patent contains a written description that shows that at the time of application the inventor was in possession of the claimed horizontal bottom surface.

Whether the '833 patent includes an adequate written description is a question of fact, but it is amendable to resolution on summary judgment if the material facts are undisputed. *See, e.g., D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1047 (Fed. Cir. 2018). The material facts are undisputed here. The specification's treatment of the claimed invention is circumscribed to 12 lines of written discussion and three figures. Ascion has adduced no evidence that this material contains any complex or implicit information that can only be discerned by an expert. The specification simply does not provide any information about the

9

configuration of the bottom of the leg assembly members, other than the challenged claim limitation itself, which was added late in the prosecution by the examiner.

The unsupported limitation, "substantially horizontal bottom surface" is an element in each of the asserted claims 1–5 and 7–16. It is also an element of the only unasserted claim, claim 6, which depends from claim 1. Accordingly, the court concludes that Ashley Furniture is entitled to summary judgment that all claims of the '833 patent are invalid for lack of written description.

### 4. Indefiniteness

Ashley Furniture also contends that the asserted claims are indefinite because the claim term "substantially horizontal bottom surface" does not define "substantially." For the sake of completeness, the court will briefly explain why it disagrees with Ashley Furniture's contention. But because claims of the '833 patent are invalid for lack of an adequate written description, this doesn't affect the outcome of Ashley Furniture's motion for summary judgment.

Terms of degree, such as "substantially," are ubiquitous in patent claims. They are upheld against indefiniteness challenges, so long as they can be reasonably understood by one of skill in the art, reading them in the context of the patent. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). Ashley Furniture is correct that "substantially" is not expressly defined in the '833 patent.

But Ashley Furniture hasn't shown that the term "substantially" fails to provide reasonable certainty about the scope of the claims in the '833 patent. The examiner's explanation for the amendment in which he introduced the term makes clear that "substantially horizontal" basically means flat, in contrast to the interlocking components found in the prior art. And how horizontal or flat the bottom surface would be judged by one of skill in the art of

designing and manufacturing furniture or similar items. Substantially flat to an engineer manufacturing a bed frame would not be the same as substantially flat to an engineer in the field of optics. Ashley Furniture has not met its burden to show that the term "substantially horizontal" introduces unreasonable uncertainty into the scope of the claims of the '833 patent.

## ORDER

IT IS ORDERED that

1. Plaintiff Ascion's motion to dismiss for lack of jurisdiction, Dkt. 103, is DENIED.

2. Defendant Ashley Furniture Industries, Inc.'s motion for summary judgment, Dkt. 69, is DENIED as moot with respect to infringement, and GRANTED with respect to invalidity. It is declared that the claims of the '833 patent are invalid for lack of an adequate written description.

Entered March 15, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge